UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATLAS TECHNOLOGIES, LLC,

                Plaintiff,                          Case Number 16-13085
                                                          Honorable David M. Lawson

v.

JESSE LEVINE, JULIUS LEVINE, and
JULIUS S. LEVINE REVOCABLE
TRUST FBO JULIUS S. LEVINE,

                Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff Atlas Technologies, LLC, a company that has designed and built press room automation equipment for over 50 years, has sued two of its former officers for misappropriation of funds, fraud, and self-dealing. The second amended complaint lists fourteen counts, all of which the defendants say must be dismissed. They base their arguments mainly on a 2011 LLC agreement, which is not attached to the pleadings and is only referenced in the second amended complaint in passing. The defendants also rely on Delaware law in several of their arguments, which they say applies because Atlas is a company formed under the laws of that state. However, Michigan law governs the tort claims, and the 2011 LLC agreement is not central to the plaintiff's claims and does not provide a basis for assessing the viability of the pleaded claims. Except for one fraud count and one statutory count, the second amended complaint pleads claims for which relief can be granted. Therefore, the Court will grant in part and deny in part the defendants' motion to dismiss.

I.

The defendants are Jesse Levine, Atlas's former chief executive officer and chief financial officer; Julius Levine, its former chief operating officer; and the Julius S. Levine Revocable Trust (Levine Trust).  Plaintiff Atlas is a limited liability company whose affairs are managed by a board of managers.  The plaintiff alleges in its second amended complaint that Jesse became chief executive officer of Atlas in January 2012.  He also was a member of the board.  It is not clear when he first became affiliated with the company, or when he assumed the duties of chief financial officer. Jesse hired his father, Julius and gave him the title of chief operating officer, on September 17, 2012.

Atlas says that it began experiencing financial difficulties in 2011.  It alleges that Jesse exploited the situation to "obtain unchecked power and control" over the company.  To do so, Atlas believes that Jesse, along with his father, breached their fiduciary duties, and violated Atlas's "Declaration of Business Principles," which they signed.  One of the tenets of that "Principles Contract" was that officers cannot personally profit from business transactions "as a result of their official position."  Another is that outside business activities that might compete with Atlas's interests were prohibited.  And another was to "avoid having financial interests in any firm doing business with or seeking to do business with the corporation, which might result in a conflict of interest."  Finally, the Principles Contract prohibited outside employment that might conflict with Atlas's interests.

The plaintiff alleges that the Levines violated the Principles Contract from the start, although Atlas did not learn of the misdeeds until March 16, 2016.  The Levines operated and had interests in various non-Atlas related entities, including sales of automated parking garages and various real

estate holdings (which we call their Unrelated Entities). Atlas contends that the defendants perpetrated a campaign to fraudulently and illegally misappropriate and convert funds from Atlas to use for their benefit, and for the benefit of their Unrelated Entities.

Then, in an attempt to cover the defendants' improper actions, Jesse endeavored to shut down Atlas's major operations by drafting a notice to customers that Atlas would no longer design and build press room automation, and drafting a notice to lay off nearly all of Atlas's employees. His attempt to shut down Atlas apparently was unsuccessful, but it alerted the board to his conduct, and Atlas removed Jesse as CEO of Atlas on March 16, 2016.

The plaintiff alleges the defendants engaged in the following improper activities:

- They diverted a substantial portion of a lawsuit settlement with General Motors Corporation into a secret bank account, and then transferred those and other company funds from the secret account to an account of the Levine Trust.

- They charged the company a credit fee in exchange for guarantying a line of credit, and continued to charge the company after the loan was repaid.

- They invoiced the company for legal expenses and charges by outside contractors incurred by the Unrelated Entities.

- They added employees to the Atlas payroll when those employees in fact performed work for the defendants' Unrelated Entities.

- They misused the company credit card for non-Atlas-related expenditures, and withdrew over $240,000 from petty cash for personal use and for the benefit of the Unrelated Entities.

- They charged the company rent for a Chicago office that was not used for Atlas business and then misappropriated the returned security deposit.

After the Levines were separated from Atlas, the plaintiff alleges that they filed fraudulent Uniform Commercial Code financing statements against Atlas's assets. Although the financing

statements were terminated by the State of Michigan, Atlas alleges that it suffers continuing damage because the trade lines show up on its credit reports.

Atlas filed its complaint on August 25, 2016, a first amended complaint on September 2, 2016, and a second amended complaint on November 28, 2016.  The second amended complaint alleges fraud (Count I); silent fraud (Count II); fraud in the inducement (Count III); common law and statutory conversion (Count IV); unjust enrichment (Count V); breach of fiduciary duty (Count VI); breach of Michigan Compiled Laws § 450.4404, which prescribes a manager's duties under Michigan's limited liability company law (Count VII); breach of Delaware General Corporation Law § 18-1101, which governs the restriction and limitation of an LLC manager's duties (Count VIII); negligent misrepresentation (Count IX); breach of Michigan Compiled Laws § 440.9501, which prohibits filing false UCC financing statements (Count X); tortious interference (Count XI); civil conspiracy (Count XII); concert of action (Count XIII); and aiding and abetting the breach of fiduciary duties (Count XIV).  Counts III, IV, V, X, XI, XII, XIII, and IX are against Jesse, Julius, and the Levine Trust; Counts I, II, VI, and VIII are against Jesse and Julius; and Count VII is against Jesse only.

On September 20, 2016, Atlas filed a motion for a preliminary injunction to prevent the defendants from filing more financing statements.  Just before the motion hearing date, the parties filed a stipulation to expunge the UCC financing statements filed by the defendants, and, after a status conference, the Court entered an order prohibiting the defendants from filing any more UCC financing statements against the plaintiff.

On November 3, 2016, the defendants filed a motion to dismiss, and filed a second motion to dismiss when the plaintiff filed the second amended complaint. The defendants also filed a motion for a preliminary injunction, which the Court denied.

## II.

The defendant's motion is based on Federal Rule of Civil Procedure 12(b)(6). The standards are well known to the parties: the purpose of the motion is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiffs "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

At this stage of the case, the Court must accept as true the pleaded facts, but not factual conclusions unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a

court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

A.

The defendants attached six exhibits (plus copies of unpublished cases) to their motion to dismiss: Atlas's certificate of formation as a Delaware limited liability company, a 2011 LLC Agreement, a Fee Agreement, a certificate of director's resolutions, Atlas's discovery requests, and an email exchange between counsel.  Only the 2011 LLC Agreement is referenced in the second amended complaint, and then only because Atlas says that the agreement was fraudulently induced.

When deciding a motion under Rule 12(b)(6), the Court looks to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, and documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Solerne, N.A.*, 534 U.S. 596 (2002).  However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings.  *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

The defendants insist that the 2011 LLC Agreement is central to the plaintiff's claims, and that the plaintiff referred to it extensively in their pleadings and briefing.  The Court does not see

it that way.  The thrust of the allegations is that Jesse and Julius Levine breached their fiduciary duties as officers and employees of Atlas.  The plaintiff also asserts various tort and statutory claims. The claims in the second amended complaint do not depend on the 2011 Agreement; that document is hardly "integral" to anything the plaintiff alleges against the defendants.  As noted above, the LLC Agreement is primarily discussed in the fraud-in-the-inducement count, but only to say that the defendants allegedly misled the plaintiff into entering into the Agreement.  The substance of the LLC Agreement is not in play, at least from the plaintiff's perspective.  Moreover, Atlas only addressed the LLC Agreement in its response brief because the defendants rely on it heavily in their motion to dismiss.

Certainly, the 2011 LLC Agreement is central to the defendants' defenses.  But that does not bring the document within the proper scope of consideration of a motion under Rule 12(b)(6), which tests the sufficiency of the *complaint*.  Sometimes, extraneous documents are so integrated into a complaint's allegations that they necessarily meld with the pleading.  For example, in *Weiner v. Klais & Co.*, the Sixth Circuit found it was appropriate to consider health benefit plan documents, even though they were not attached to the complaint, because the plaintiff's claims were based on rights under the health care plan.  108 F.3d at 89.  Contrast that with the circumstances in *Wysocki v. IBM*, where the defendant countered the plaintiff's claim under the Uniformed Services Employment and Reemployment Rights Act by producing a general release signed by the plaintiff, which waived the plaintiff's right to bring any claims against IBM.  The court of appeals held that the district court could not consider the release unless it converted the motion to dismiss (under Rule 12(b)(6)) into a motion for summary judgment, because the general release was a matter outside of the pleadings.  607 F.3d at 1104.

The defendants argue that *Hensley Manufacturing v. ProPride, Inc.* supports their position that the Court should consider the 2011 LLC Agreement. 579 F.3d 603 (6th Cir. 2009). They are mistaken. In *Hensley*, the court articulated the general rule that "[w]hen reviewing a motion to dismiss, the district court may not consider matters beyond the complaint." *Id.* at 613 (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)). The panel's reasoning in that case is based on what would have occurred had the district court converted the motion to dismiss into one for summary judgment. *Ibid.* That reasoning does not apply here.

The plaintiffs also point out that the 2011 LLC Agreement actually contradicts the allegations in the complaint, because it purports to absolve Jesse and Julius of the duties of loyalty and care, to refrain from self-dealing, and to avoid conflicts of interest, which are integral to several of the plaintiff's claims. Relying on *KSR International Co. v. Delphi Automotive Systems, LLC*, 523 F. App'x 357 (6th Cir. 2013), the defendants argue that the Court can consider the 2011 LLC Agreement even if it contradicts the allegations in the complaint. In *KSR*, the plaintiff appealed the district court's order granting the defendant's motion to dismiss a breach of contract claim. *Id.* at 358. The dispute centered on whether the defendant owed the plaintiff for services related to engineering, developing, and testing of a throttle position sensor. *Id.* at 359. The Sixth Circuit noted that the contract was discussed extensively in the complaint, but tellingly it was not attached to the complaint. *Ibid.* Without much explanation, the Sixth Circuit concluded it was appropriate for the district court to consider the contract on a motion to dismiss because it was central to the plaintiff's claims. *Ibid.* The court of appeals held that the district court correctly found that the contract between the parties was for goods, and not services, and therefore it was appropriate to dismiss the plaintiff's claim for recovery of pre-production engineering services. *Id.* at 361.

-8-

But *KSR* is distinguishable from the present case, because *KSR* involved a breach of contract claim where the contract controlled the rights of the parties. The *KSR* plaintiff discussed the contract extensively in the complaint. Here, the claims in the second amended complaint focus on breach of fiduciary duties, torts, and statutory claims. There is no discussion in the second amended complaint of the contents of the 2011 Agreement, and the only mention of it relates to the defendants' alleged fraud in inducing the plaintiff to enter the Agreement.

Furthermore, there is a serious question as to the 2011 LLC Agreement's legitimacy. The signature page is different from the other pages in the agreement, because it does not contain the same footer as the rest of the document, and it does not contain a page number consistent with the other pages. There is at least some concern about its authenticity that could be addressed through discovery focusing on its provenance. The agreement is signed only by Jesse in multiple capacities. The defendants argue that the Agreement is still enforceable against Atlas under Delaware's Limited Liability Act even though another Atlas representative did not sign it. That may be true. However, that is beside the point. Although the Delaware Limited Liability Act is "designed to permit [LLC] members maximum flexibility in entering into an agreement to govern their relationship," *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 293 (Del. 1999), "[i]t is the members who are the real parties in interest. *Ibid*. Discovery is needed to explore the details behind that Agreement.

The defendants have not demonstrated that the 2011 LLC Agreement or the Fee Agreement are central to the plaintiff's claims. They play no role, therefore, in the determination of the defendants' motion to dismiss. The arguments based on the idea the 2011 Agreement immunizes the defendants from the plaintiff's tort and fiduciary defalcation claims are irrelevant to the question whether the plaintiff has stated claims for which relief can be granted.

B.

The parties dispute which state's laws supply the rules for decision in this case, at least for most of the claims. The defendants argue that because Atlas is a Delaware LLC, Delaware law governs all internal affairs of Atlas. The plaintiff argues that Michigan law applies to all of its claims because the current operating agreement states that the affairs of Atlas are governed by Michigan law. The plaintiff's claims fall into three categories: tort and unjust enrichment claims related to the defendants' operation of Atlas (Counts I through V, IX, XII, and XIII); breach of fiduciary duty claims (Count VI through VIII, and XIV); and claims related to filing of the UCC financing statements (Counts X and XI). There is no dispute that the UCC financing claims are governed by Michigan law.

There is no choice of law provision properly before the Court, and the plaintiff's allegation that Michigan law applies under the *current* LLC agreement has no relevance. Under Michigan law, "the laws of the jurisdiction under which a foreign limited liability company is organized shall govern its organization and internal affairs. . . ." Mich. Comp. Laws § 450.5001. Fiduciary obligations, for example, are related to the internal affairs of a limited liability company. *See Dow Chem. Co. v. Reinhard*, 2008 WL 495501 at *11 (E.D. Mich. Feb. 20, 2008) ("Delaware's interests required the displacement of Michigan law in favor of Delaware's law, at least as to a corporation's claim of a breach of fiduciary duty against a former executive."); *Trinity Indus. Leasing Co. v. Midwest Gas Storage, Inc*., 33 F. Supp. 3d 947, 968 (N.D. Ill. 2014) (explaining that the issue of whether defendants owed plaintiff a fiduciary duty was related to the internal affairs of the limited liability company, which, under Indiana's choice-of-law rules, was governed by the law of the state

-10-

of incorporation).  Because Atlas is organized under Delaware law, that state furnishes the rules of decision for the breach of fiduciary duties claims.

However, Michigan law applies to the plaintiff's tort claims.  A federal court sitting in diversity faced with a choice-of-law issue applies the choice-of-law rules of the forum state.  *Klaxon Co. v. Senator Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under Michigan's choice-of-law rules concerning tort claims, there is a presumption that Michigan law applies unless there is a rational reason to displace it.  *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (citing *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286, 562 N.W.2d 466, 471 (1997)).  To determine whether there is a rational reason for displacement, Michigan courts apply a two-step analysis:

> First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome.  If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Sutherland*, 454 Mich. at 286, 562 N.W.2d at 471.  Under this test, "Michigan courts . . . use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter."  *Hall v. General Motors Corp.*, 229 Mich. App. 580, 585, 582 N.W.2d 866, 868 (1998). This "interests analysis" is to be distinguished from the traditional (and discarded) approach in Michigan, known as the doctrine of *lex loci delicti*, which dictated that the law to be applied was the law of the state where the tort occurred.  *Sutherland*, 454 Mich. at 283-84, 562 N.W.2d at 470. The plaintiff mistakenly relies on the doctrine of *lex loci delicti*, which Michigan replaced with the two-step interests analysis.

-11-

Because Atlas is a limited liability company organized under Delaware law, one might say that Delaware has at least a minimal interest in having its laws applied to Atlas.  However, the activities that support the tort and unjust enrichment claims are alleged to have occurred in Michigan, the plaintiff has its principal place of business in Michigan, and Jesse and Julius Levine are citizens of Illinois.  Any interest Delaware may have in the resolution of this dispute is substantially outweighed by Michigan's interest in seeing its residents protected from fraudulent conduct, which may have an adverse affect on jobs within the state.  There is no "rational reason" to displace Michigan law on the claims not related to the internal affairs of Atlas.

Delaware law applies to the plaintiff's breach of fiduciary duty claims, and Michigan law to the remaining claims.  The plaintiff alleges in Count VII that the defendants violated Michigan Compiled Laws § 450.4404, which is a section of Michigan's Limited Liability Company Act.  The statute outlines a manager's duties to his or her limited liability company, including the requirement that "[a] manager shall discharge the duties of manager in good faith . . . and in a manner the manager reasonably believes to be in the best interests of the limited liability company."  Mich. Comp. Laws § 450.4404(1).  That is the type of prescription that addresses the "organization and internal affairs" of a limited liability company, for which Atlas must look to the law of Delaware, not Michigan.  The plaintiff, therefore, fails to state a claim against the defendants in Count VII, which is based on a Michigan statute.

## C.

The defendants included a line in their brief that Count VIII must be dismissed, because it is based on Delaware Code tit. 6, § 18-1101, which, they assert, "does not give rise to a separate cause of action."  However, the defendants cite no authority to support that argument, and therefore

have abandoned it.  *Northland Ins. Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 452 (6th Cir.

2003) (noting the "settled rule" that "issues adverted to in a perfunctory manner, unaccompanied

by some effort at developed argumentation, are deemed waived") (citation omitted).  Moreover, the

statute does declare that "a limited liability company agreement may not limit or eliminate liability

for any act or omission that constitutes a bad faith violation of the implied contractual covenant of

good faith and fair dealing."  Del. Code Ann. tit. 6, § 18-1101(e).  The plaintiff alleges that the

defendants engaged in conduct that would fit that description.

D.

In Count III of the second amended complaint, the plaintiff alleges that the defendants

"fraudulently induced" Atlas to enter into the 2011 LLC Agreement.  The defendants argue that the

plaintiff has not pled with sufficient particularity a fraud in the inducement claim.  The plaintiff

argues that had the defendants disclosed that they would try to defraud and embezzle from Atlas

without recourse, it would not have entered into an LLC Agreement with them.

To establish fraud in the inducement, a party must show that "'(1) the defendant made a

material representation; (2) the representation was false; (3) when the defendant made the

representation, the defendant knew that it was false, or made it recklessly, without knowledge of its

truth and as a positive assertion; (4) the defendant made the representation with the intention that

the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered

damage.'"  *Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 274 Mich. App. 239, 242-43, 733

N.W.2d 102, 104-05 (2006) (quoting *Belle Isle Grille Corp. v. Detroit*, 256 Mich. App. 463, 477,

666 N.W.2d 271 (2003)).  "'Fraud in the inducement to enter a contract renders the contract voidable

at the option of the defrauded party.'" *Ibid.* (citing *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich. App. 636, 640, 534 N.W.2d 217, 219 (1995)).

But when alleging fraud in a federal complaint, a party must state "with particularity" the circumstances constituting the fraud.  Fed. R. Civ. P. 9(b); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010).  That means that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (quotation marks and citation omitted).  A party must also identify the "alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (quotation marks and citations omitted).

The plaintiff has not alleged fraud in the inducement with the requisite particularity because it did not identify any representation upon which the plaintiff relied.  The complaint does not say who made the alleged fraudulent statements, where and when the statements were made, or what the statements were.  Instead, the second amended complaint includes an allegation that the defendants "intentionally and fraudulently *omitted* that they would use the LLC Agreement with the Special Manager role and Loan to take the improper actions set forth herein, including converting Atlas funds." Second Amend. Compl. ¶ 177 (emphasis added).  That allegation is not sufficient to satisfy Rule 9(b)'s particularity requirement.

-14-

E.

The defendants contend that the plaintiff's tort claims are barred under the economic loss doctrine.  The plaintiff argues that the tort and statutory claims arise from circumstances separate from any LLC agreement, and therefore are not barred by the economic loss doctrine.

The economic-loss doctrine is a "judicially created doctrine" that prohibits a party to a contract from bringing tort claims that are factually indistinguishable from breach of contract claims.  *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 240 (6th Cir. 1994).  The rule traces its origin to *Hart v. Ludwig*, 347 Mich. 559, 567, 79 N.W.2d 895 (1956), which held that a plaintiff may not prevail on any claim for tort liability where the relationship of the parties is entirely governed by a contract between them.

The doctrine draws a line between breach of contract claims arising from commercial transactions, where commercial and contract law protect the parties' economic expectations, and tort actions intended to remedy unanticipated injuries as a result of conduct that violates a separate legal duty apart from the contract.  *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 521, 486 N.W.2d 612, 615 (1992).  The Michigan Court of Appeals has held that "[t]he distinction is critical" to avoid the "danger that tort remedies could simply engulf the contractual remedies and thereby undermine the reliability of commercial transactions."  *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 370-71, 532 N.W.2d 541, 544 (1995).  The doctrine is animated by the idea that tort remedies should not bail out parties who could have anticipated losses caused by failed performance and negotiated an appropriate response.  *Detroit Edison Co.*, 35 F.3d at 240 (stating that "[r]ational economic actors bargaining at arms length, in deciding both the extent of the seller's liabilities and the purchase price, should consider the possibility that the

-15-

product will not perform properly: the buyer may insist on additional warranties to cover such a contingency, or the buyer may decide to assume a greater degree of the risk of such failure in exchange for a lower purchase price from the seller").

However, the Sixth Circuit has "explained that under Michigan law, '[n]ot all tort claims . . . are barred by the existence of a contract.  Rather, Michigan courts must inquire whether the legal duty allegedly violated by a defendant arises separately and distinctly from a defendant's contractual obligations.'"  *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 582 (6th Cir. 2016) (quoting *DBI Invs., LLC v. Blavin*, 617 Fed. App'x. 374, 381 (6th Cir. 2015)).  For example, Michigan courts have recognized an exception to the economic loss doctrine for the intentional tort of fraud in the inducement.  "Fraud in the inducement . . . addresses a situation where the claim is that one party was tricked into contracting.  It is based on pre-contractual conduct which is, under the law, a recognized tort."  *Huron Tool & Eng'g Co.*, 209 Mich. App. at 371, 532 N.W.2d at 544 (citing *Williams Electric Co. Inc. v. Honeywell, Inc.,* 772 F. Supp. 1225, 1237-1238 (N.D. Fla. 1991)).  "Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely — which normally would constitute grounds for invoking the economic loss doctrine — but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior."  *Id.* at 372, 532 N.W.2d at 546.  Similarly, in *Tyson*, the Sixth Circuit concluded that a car dealership's duty to refrain from wrongfully exercising dominion over the plaintiff's vehicle "emanated from the policies underlying the tort of conversion," rather than the contract of sale.  *Tyson*, 836 F.3d at 583.

Michigan law plainly states that the economic loss doctrine does not bar the plaintiff's tort claims, particularly its fraud claims, because the plaintiff could not have anticipated losses caused

by the tortious conduct alleged in the second amended complaint.  The legal duties that the defendants allegedly violated arise separately and distinctly from the defendants' contractual obligations.

F.

The defendants argue that the claims against the Levine Trust in Counts III through V and XII through XIV are insufficient because the second amended complaint relies on "group pleading," that is, in some instances the plaintiff does not attribute misconduct to an individual defendant and instead refers collectively to "defendants."  That criticism is leveled mainly at the fraud counts, and appropriately so.  Under *Hoover v. Langston Equipment Associates, Inc.*, 958 F.2d 742, 745 (6th Cir. 1992), a plaintiff must specify which of the defendants made each fraudulent statement and may not bring claims of fraud against "the defendants" generally.  Collective references to "the defendants" or other such categories by themselves fail the specificity test of Rule 9(b).  *See D.E.&J Ltd. Partnership v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003) (observing that "[n]ot only does such 'group pleading' run afoul of *Central Bank* [*v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)], but also it fails to meet . . . Fed. R. Civ. P. 9(b)'s specificity requirements . . . ." (citing cases)).  Rule 9(b) does not permit a plaintiff to allege fraud by "indiscriminately grouping all of the individual defendants into one wrongdoing monolith."  *United States, ex rel Branhan v. Mercy Health Sys. of SW. Ohio*, 188 F.3d 510 (6th Cir. 1999) (Clay, J., concurring in part and dissenting in part) (quoting *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1443 (S.D. Cal. 1988)).

But "[w]hen faced with a motion to dismiss for failure to plead fraud 'with particularity' as required by Rule 9(b) . . ., 'a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8.'"  *Whalen v. Stryker, Corp.*, 783 F. Supp. 2d 977,

982 (E.D. Ky. 2011) (quoting *Michaels Building Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)).  "Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8."  *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) (quoting *Michaels*, 848 F.2d at 679).  "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct."  *Ibid.*  "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff[']s claim of fraud."  *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (quotation marks omitted).

The 256-paragraph second amended complaint outlines in significant detail a scheme to defraud Atlas by Jesse and Julius who were officers and employees of Atlas.  The pleading describes how the plaintiff discovered the purported scheme and each defendants' alleged role.  For instance, the plaintiff alleges that once Jesse became the CEO of Atlas, he hired his father, Julius, as the COO. Together they allegedly converted funds from a GM settlement agreement, used Atlas funds to pay for expenses unrelated to Atlas, hired employees ostensibly to work for Atlas that were instead working for Jesse's and Julius's other ventures, and hid converted funds in the Levine Trust.  These allegations provide a general framework for relevant discovery and are sufficient to alert the defendants "'as to the particulars of their alleged misconduct'" so that they may respond to the complaint.  *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

There is no cause to dismiss the second amended complaint because of "group pleading."

G.

The defendants argue that most of the plaintiff's claims fall under Delaware law, and are therefore untimely under Delaware's three-year statute of limitations.  The plaintiff argues that its claims are timely under Michigan law, which has a six-year statute of limitations.  And even if Delaware law applies, it says, its claims are still timely because it did not become aware of the defendants' alleged wrongdoing until late 2015.

Under Michigan law, the period of limitations is six years for claims based on breach of contract or other personal actions.  Mich. Comp. Laws §§ 600.5807(8), 5813.  The earliest allegations of wrongdoing began in late 2011, and the plaintiff filed its complaint on August 25, 2016.  Therefore, any claim brought under Michigan law, which, as noted earlier, include all the tort claims, is timely.

Under Delaware law, a breach of fiduciary duty claim must be brought within three years. Del. Code tit. 10, § 8106; *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007).  Absent an exception, the plaintiff's fiduciary claims would be time barred.  There are two exceptions to the Delaware statute of limitations that are relevant here.  First, a fraudulent concealment tolls the statute of limitations when a defendant has fraudulently concealed from a plaintiff the facts necessary to put him on notice of the facts supporting his claim.  *Ewing v. Beck*, 520 A.2d 653, 667 (Del. 1987).  "Under this doctrine, a plaintiff must allege an affirmative act of 'actual artifice' by the defendant that either prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth."  *Tyson Foods*, 919 A.2d at 584 (citing *Ewing*, 520 A.2d at 667). Second, "under the theory of equitable tolling, the statute of limitations is tolled for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff

-19-

reasonably relies on the competence and good faith of a fiduciary." *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6 (Del. Ch. July 17, 1998), *aff'd* 725 A.2d 441 (Del. 1999).

The plaintiff has alleged that the defendants fraudulently concealed their wrongdoing. Atlas alleged that the defendants opened a secret bank account, made misrepresentations to Atlas employees in emails, and hid their activities related to self-dealing. It was not until 2015 that Atlas allegedly became aware of the secret account, which led to an investigation that uncovered other alleged wrongful conduct by the defendants. Therefore, based on the allegations in the complaint, the statute of limitations on the fiduciary claims are tolled both because the defendants concealed their wrongdoing, and because the plaintiff relied on the competence and good faith of the defendants as fiduciaries.

The plaintiff's claims, whether under Michigan law or Delaware law, are not barred by the statute of limitations.

### H.

Lastly, the defendants argue that the damages alleged in Count X (Breach of Mich. Comp. Laws § 440.9501) and Count XI (Tortious Interference) are speculative because they are based on business contingency, and therefore the plaintiff has failed to state a cognizable claim in those counts. The plaintiff disagrees, and says that its allegations are not speculative, and in any case, it has incurred costs challenging the fraudulently filed UCC financing statements. The only case cited by the parties on this issue is *Hemlock Semiconductor Corp. v. Kyocera Corp.*, 2016 WL 795854 (E.D. Mich. Mar. 1, 2016). *Hemlock* is distinguishable from the present case.

*Hemlock* was a breach of contract action between companies in the global solar energy industry. *Id*. at *1. The district court dismissed the counter-claimant's breach of contract claim in

part because it was based on speculation of what third parties, including the Chinese government, would have done had one of the parties expanded its operations. *Id*. at *6. The *Hemlock* court reasoned that in a breach of contract claim, a party may recover only the damages that are the direct result of the alleged breach. *Ibid*. In this case, however, Atlas's claims are based in tort and statutory violations; the damages it seeks are not limited to contract remedies.

The plaintiff alleges that the defendants filed fraudulent UCC statements against it. Under Michigan law, "[i]f a person files a false or fraudulent financing statement with the office of the secretary of state . . . , a debtor named in that financing statement may file an action against the person that filed the financing statement seeking appropriate equitable relief or damages, including, but not limited to, an order declaring the financing statement ineffective and ordering the office of the secretary of state to terminate the financing statement, and reasonable attorney fees." Mich. Comp. Laws § 440.9501(7). The plaintiff alleged that the defendants filed financing statements with the secretary of state that subsequently were terminated and expunged because they were fraudulent. The plaintiff alleged that it suffered damages as a result of the fraudulent financing statements, including the cost to challenge the statements. The plaintiff has alleged a plausible claim under section 440.9501(7), and if successful on its claim, it is entitled to damages, including the costs associated with challenging the UCC financing statements.

The plaintiff also has alleged a plausible claim for tortious interference with a business expectancy. "To prevail on a claim of tortious interference with economic expectancy under Michigan law, Plaintiffs must prove: (i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant

-21-

actual damage." *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (quoting *Lucas v. Monroe Cnty.*, 203 F.3d 964, 979 (6th Cir. 2000)).  "Under Michigan law, to satisfy the element of a 'valid business expectancy,' Plaintiffs must show that they had more than a 'subjective expectation of entering into a [business] relationship.'" *Saab Auto. AB v. Gen. Motors Co.*, 953 F. Supp. 2d 782, 789 (E.D. Mich. 2013), *aff'd*, 770 F.3d 436 (6th Cir. 2014) (quoting *Compuware Corp. v. IBM*, 259 F. Supp.2d 597, 604 (E.D. Mich. 2002)).  "'The [business relationship or expectancy of a relationship] must be a reasonable likelihood or a probability, not mere wishful thinking.'" *Lucas v. Monroe Cty.*, 203 F.3d 964, 979 (6th Cir. 2000) (quoting *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich. App. 361, 377, 354 N.W.2d 341, 348 (1984) (marks in original)).

In *Lucas*, the plaintiff towing companies alleged that the county sheriff's department improperly removed them from the county's list of towing services.  *Id*. at 967.  The plaintiffs brought a claim for tortious interference with economic relations.  *Id*. at 978-79.  The Sixth Circuit reversed the summary judgment and found that the plaintiffs provided sufficient evidence that the "Sheriff's wrongful conduct in excluding them from the regular tow rotation prevented them from entering into a business relationship with stranded motorists who request tow services via central dispatch."  *Id*. at 979.

Here, the plaintiff alleges that one of its large customers only invites companies with credit scores better than a certain level to bid on projects.  Second Amend. Compl. ¶ 154.  Atlas alleges that it has previously bid on projects for this company.  *Ibid*.  However, after its credit score was lowered by the allegedly fraudulent UCC financing statements, Atlas was no longer invited to bid on projects that it otherwise would have been invited to bid on and been awarded.  *Ibid*.  Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement

to relief.  *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)."  *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).  Although discovery may show that was mere wishful thinking, taking the allegations as true and drawing all reasonable inferences in the light most favorable to the non-moving party, the plaintiff has pleaded a plausible claim for tortious interference with a business expectancy.

III.

The plaintiff has not pleaded fraud in the inducement with the particularity required by Federal Rule of Civil Procedure 9(b), and therefore Count III of the second amended complaint must be dismissed.  The plaintiff is a limited liability company organized under Delaware law; therefore its internal affairs are governed by the laws of that state.  Count VII of the second amended complaint, which alleges a violation of the duties the defendant manager owed to the company, is based on Michigan law, and also must be dismissed.  The crux of the defendants' remaining arguments is based on a document that was neither attached to the second amended complaint nor relied upon by the plaintiff.  Looking to the pleadings and appropriately considered items, the remaining counts of the second amended complaint state plausible claims.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss [dkt. #29] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Counts III and VII of the second amended complaint are **DISMISSED**.  The motion otherwise is **DENIED**.

It is further **ORDERED** that the defendants' previously-filed motion to dismiss [dkt. #20] is **DISMISSED AS MOOT**.

-23-

It is further **ORDERED** that counsel for the parties appear for a status conference to discuss case management issues on **August 7, 2017 at 9:00 a.m.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 26, 2017

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 26, 2017.

s/Susan Pinkowski
SUSAN PINKOWSKI

---

-24-